## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEROY ALEXANDER,                      :        Civil No. 3:25-cv-1191
                                      :
            Petitioner                :        (Judge Mariani)
                                      :
    v.                                :
                                      :
WARDEN J. GREENE,                     :
                                      :
            Respondent                :

### MEMORANDUM

Petitioner Leroy Alexander ("Alexander") initiated the above-captioned action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that the Federal Bureau of Prisons ("BOP") improperly denied him prerelease custody placement in a halfway house or home confinement due to his parole violations. (Doc. 1). For the reasons that follow, the Court will deny the habeas petition.

I.    **Background**

Alexander initially entered BOP custody on March 24, 1994, to serve a life sentence imposed by the Superior Court for the District of Columbia for kidnapping, armed robbery, sodomy, and possession of a firearm during a crime. (Doc. 7-2, Declaration of BOP Case Manager Mitchell Cassel ("Cassel Decl."), at 2 ¶ 3; Doc. 7-3, Public Information Inmate Data; Doc. 7-5, Warden Greene's Recommendation for Denial of Residential Reentry Center ("RRC") Placement). He was released on parole on November 6, 2009. (Doc. 7-3).

Since his release on parole in 2009, Alexander has violated the conditions of his parole on the following, numerous occasions. (*Id.*).

On July 11, 2012, Alexander was sentenced to a 14-month term of imprisonment for his conviction of attempted distribution of a controlled substance. (*Id.*). He was released, via good conduct time, on December 27, 2012. (*Id.*).

On October 28, 2015, Alexander was arrested in Fairfax County, Virginia, for grand larceny greater than $200.00, not from a person, and entering property to damage. (*Id.*). Then, on December 29, 2015, Alexander was arrested in the District of Columbia for forgery. (*Id.*). His parole was revoked. (*Id.*). He was released, via parole, on February 23, 2018. (*Id.*).

On March 30, 2019, Alexander was arrested in Charlottesville, Virginia, and charged with possession with intent to distribute marijuana, reckless driving, driving while intoxicated, refusal to submit to blood/breath test, and driving with an open container. (*Id.*). His parole was revoked. (*Id.*). He was released, via parole, on May 30, 2020. (*Id.*).

Alexander's current parole violator term commenced on August 26, 2024, after receiving an alleged violation report for numerous positive urinalysis tests for cocaine, numerous failures to report for urinalysis, and failure to report for supervision and to get treatment. (*Id.*).

Alexander's current projected release date is December 13, 2025, via parole. (*Id.*).

Respondent argues that the habeas petition must be denied on the following grounds: (1) Alexander has no legal entitlement under the Second Chance Act to a prerelease custody placement; and (2) the BOP properly considered Alexander for prerelease custody placement under the five factors stated in 18 U.S.C. § 3621(b), and the BOP did not abuse its discretion in denying Alexander an RRC placement because he has a public safety factor of sex offender and he has an extensive history of parole violations. (Doc. 7).  The petition is ripe for disposition.

## II.    Discussion

It is well-settled that the award of prerelease custody days under the Second Chance Act is statutorily committed to the exclusive discretion of the BOP, and thus an inmate has no right or entitlement to a certain amount of Second Chance Act prerelease custody.  *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 251 (3d Cir. 2005) (explaining, with reference to the Second Chance Act, "that the BOP may assign a prisoner to [prerelease custody] does not mean that it must").  Alexander's placement is solely in the discretion of the BOP and Alexander has no vested liberty interest in a placement in a residential facility notwithstanding the provisions of the Second Chance Act.  *See Pisman v. Warden, Allenwood FCI Low*, 2023 WL 6618238, at *1 (3d Cir. 2023) (a prisoner's "pre-release placement decisions are committed to the BOP's sole discretion"); *see also Tapia v. United States*, 564 U.S. 319, 331 (2011) ("[w]hen a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over the place of the prisoner's

imprisonment and the treatment programs (if any) in which he may participate"). All that is

required is a good-faith, individualized review of an inmate's potential transfer to prerelease

custody, which review must consider the statutory factors set forth in 18 U.S.C. § 3621(b).

See Woodall, 432 F.3d at 251; Brown v. Warden Fairton FCI, 617 F. App'x 117, 119 (3d Cir.

2015) (nonprecedential). Alexander received this individualized determination. (See Doc.

7-2, Cassel Decl., at 2-3 ¶¶ 4-6; Doc. 7-5).

The Second Chance Act provides:

(c) Prerelease custody. —

(1) In general. —The Director of the Bureau of Prisons shall, to the extent
practicable, ensure that a prisoner serving a term of imprisonment spends a
portion of the final months of that term (not to exceed 12 months), under
conditions that will afford that prisoner a reasonable opportunity to adjust to
and prepare for the reentry of that prisoner into the community. Such
conditions may include a community correctional facility.

(2) Home confinement authority. —The authority under this subsection may
be used to place a prisoner in home confinement for the shorter of 10 percent
of the term of imprisonment of that prisoner or 6 months. The Bureau of
Prisons shall, to the extent practicable, place prisoners with lower risk levels
and lower needs on home confinement for the maximum amount of time
permitted under this paragraph.

18 U.S.C. § 3624(c). The Act requires the BOP "to make an individual determination that

ensures that the placement is 'of sufficient duration to provide the greatest likelihood of

successful reintegration into the community.'" Wilson v. Strada, 474 F. App'x 46, 46-47 (3d

Cir. 2012) (nonprecedential) (quoting 18 U.S.C. § 3624(c)(6)(C)). In doing so, the BOP

must consider the following five factors: "(1) the resources of the facility contemplated; (2)

the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence—(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28." 18 U.S.C. § 3621(b); *see also Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (the Court's "review is limited to whether the BOP abused its discretion.").

In a nutshell, when considering an individual's eligibility for prerelease placement in an RRC, the BOP is required to ensure that decisions are made: (A) consistent with the five factors in 18 U.S.C. § 3621(b); (B) on an individualized basis; and (C) so that the duration of the placement period gives the inmate the greatest likelihood of successful community reintegration. 18 U.S.C. § 3624(c)(6).

The record in this case clearly establishes that Alexander's Unit Team gave him individualized consideration consistent with the five factors of section 3621(b). (Doc. 7-2, Cassel Decl., at 2-3 ¶¶ 4-6; Doc. 7-5). The Unit Team noted that Alexander had numerous violations and arrests while on parole. (*Id.*). They noted further that Alexander has a public safety factor of sex offender. (Doc. 7-4, Male Custody Classification Form). Case Manager Cassel explains that "[i]nmates assigned a public safety factor of sex offender and those whose behavior history suggests a substantial or continuing threat to the community, such as repeated violations, shall not ordinarily participate in community corrections programs."

(Doc. 7-2, Cassel Decl., at 2-3 ¶ 5).  The Unit Team ultimately found that due to Alexander's

repeated violations and arrests while on parole, and his public safety factor of sex

offender—indicating that he remains a threat to the safety of the community—he was not

appropriate for RRC placement.  (Doc. 7-2, Cassel Decl., at 3 ¶ 6; Doc. 7-5).  The Warden

reviewed the Unit Team's recommendation and the relevant factors in Alexander's case and

denied RRC placement.  (Doc. 7-5).

After reviewing Alexander's petition and the applicable statutes, the Court finds that

the BOP has the discretion to determine if, and when, to transfer Alexander to an RRC.

Consistent with 18 U.S.C. § 3621(b), the BOP individually considered Alexander under the

factors relevant to RRC placement and denied him placement in an RRC.  (Doc. 7-5).

Alexander's purported disagreement with the BOP's decision does not establish a

constitutional violation, as nothing in the Second Chance Act or § 3621(b) entitles an inmate

to any guaranteed placement in an RRC.  See Woodall, 432 F.3d at 244-51 (holding, in

exercising its discretion to make halfway house placement decisions, the Bureau must

consider the factors set forth in § 3621(b); "[h]owever, that the [Bureau] may assign a

prisoner to a halfway house does not mean that it must."); see also Beckley v. Miner, 125 F.

App'x 385, 389 (3d Cir. 2005) (nonprecedential) (holding, "[i]t is well settled, and the parties

agree, that the Bureau has nearly exclusive jurisdiction to classify and transfer prisoners.").

Alexander's habeas petition must, therefore, be denied.[1]

## III.   Conclusion

Consistent with the foregoing, the Court will deny the petition for writ of habeas

corpus filed pursuant to 28 U.S.C. § 2241.  (Doc. 1).  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: August ___, 2025

---

[1]   Although he provides no analysis, Alexander cites to *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).  (Doc. 1, at 5).  In *Loper Bright*, the Supreme Court overruled the *Chevron, U.S.A., Inc. v. Nat. Resources Defense Council*, Inc., 467 U.S. 837 (1984) doctrine, which required courts to defer to an administrative agency's reasonable interpretation of an ambiguous statute. *Id.* at 412.  Under *Loper Bright*, courts are to give due regard to an agency's expertise in a particular field, but are no longer bound by the agency's interpretation of the statute. *Id.* at 403.  Courts must interpret a statute without deferring to an agency's policy preference that is not expressed in the language of the statute. *Id.* at 403-04.  At most, Alexander has expressed a personal disagreement with the BOP's decision regarding his RRC denial.  His reliance upon *Loper Bright* is meritless.